### John Huff v. The State.

No. 2666.   Decided May 13, 1908.

**1.—Carrying Pistol—Trial Before Court.**

Where a case is submitted to the trial judge without the intervention of a jury, his conclusions on the facts will receive the same consideration and will be sustained by the same rules as those governing the appellate court in passing on verdicts of juries; and the judgment will not be reversed unless the same could not in fairness be sustained by the evidence.

**2.—Same—Sufficiency of the Evidence.**

Where upon trial for unlawfully carrying a pistol the evidence amply sustained the theory of the trial court that defendant's explanation that he was carrying the pistol to the place of business of another and not in violation of law was probably a fabrication, the conviction was sustained.

Appeal from the County Court of McCulloch.   Tried below before the Hon. C. A. Wright.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

A. G. *Walker,* for appellant.—Christian v. State, 37 Texas, 475.

F. J. *McCord,* Assistant Attorney-General, and *Jno. E. Brown,* County Attorney, for the State.—

RAMSEY, Judge.—This case was before this court on a former appeal ( 51 Texas Crim. Rep., 441; 102 S. W. Rep., 407), on which appeal the evidence was held insufficient to sustain a conviction, and was reversed for that reason only.   The former opinion does not discuss the facts at any length.   We have examined the record, however, on the former appeal and compared it with the facts as established on the trial from which this appeal was prosecuted.   The records are not identical. in every respect but there were some elaborations and greater particularity in the testimony in the case now before us than appeared in the statement of facts on the former trial.

1. The conviction is claimed by counsel for appellant to be in a measure a reflection upon this court in that the court below convicted the appellant in the face of the holding by this tribunal that the evidence was insufficient to sustain a conviction, and it is now earnestly insisted and strongly urged that the evidence in the case is insufficient to sustain the conviction and that such judgment should be reversed and the cause dismissed by us for that reason.   We do not think that the

case should be reversed nor do we believe that under the record, as here presented, it can be said that there is no evidence on which a conviction could have been had. The facts show briefly, that appellant was working in what is referred to as an "Uno Joint" in the town of Brady in the County of McCulloch; that it belonged or was claimed to have belonged to one Tom Roberts; that on the night of the alleged offense, being a Saturday night in December, 1906, the appellant was arrested by Henry Miller, city marshal of Brady, about midnight, and the defense now interposed is that appellant was carrying this pistol to the place of business of one Bill Teague who was also keeping, as the witnesses say, a "Uno Joint." The testimony of Henry Miller, city marshal of Brady, was to the effect that about midnight on the night of December 29, 1906, he saw a light in the upper story of a two-story frame building that stands on the west side of the square in Brady just south of Tom Roberts' "Uno Joint"; that he saw men up there and was watching the building because he thought there was gambling going on up there; that he then rode through a back alley that runs back of the building and rode on across the street and came back, hitched his horse and started upstairs to this building. That he saw two men coming out of the alley between the "Uno Joint" and a rock building of one Rice, whom he took to be appellant and some one else; that they came out of the alley onto the street or square a few feet in front of the "Uno Joint," looked around awhile and then turned around and went back into the alley between the two buildings, going west; that he, Miller, then started to go back into the alley where they had gone and saw them coming south down the alley; that he then stepped into an offset where they could not see him until they reached the street; that when they reached the street he saw them and saw that appellant had a pistol in his hand; that he then spoke to him and told him to give him that pistol; that appellant did not stop but just kept going and that he started after him; that when he told appellant to stop, the other man who was with appellant, turned and went back into the alley; that appellant went east until he reached the southeast corner of the store of Mrs. Moore when he turned north, going along in front of the row of buildings on the west side of the square; that he kept following appellant telling him to stop and give him the pistol and appellant kept going north, and witness never did catch him until he had gotten in front of the two-story building where he had seen the light upstairs. At this place he caught him and took hold of the pistol and told him to give it to him, Miller. He kept hanging on to the pistol and saying that Joe Taylor was after him, cursing him and that he had stood it as long as he was going to or something like that and that he did not want to give the pistol up; that he finally took the pistol away from appellant; that appellant then said it was Tom Roberts' pistol, and began begging witness to let him have it and let him put it back in Tom Roberts' "Uno Joint," which witness declined to do; that while he was there with appellant the other man came where they were and said "What's

up." I said, "You know what's up; you know that you fellows are slipping around here trying to get a shot at me because you thought I was watching you." The other fellow who came up to them was Joe Taylor. There was no denial of or reply to the charge implied in this statement. It seems that one Babe Huff, a brother of appellant, also came up while the city marshal was there. At no time, according to the testimony of Miller, during the conversation did appellant claim that he was taking the pistol to Teague's place of business. It was also in evidence, as stated above, that when the city marshal accused appellant and the other person with him of wanting to take a shot at him on account of his supposed interference with the gambling that neither of them made any remark. In defense of this charge appellant proved on the trial by Tom Roberts that he had told appellant when he closed up that night to carry his pistol and store key to Bill Teague's place of business, as he would want them next morning as he desired to go to pasture and would not likely see him, as it was Sunday and appellant was generally gone out of town on Sunday; that it was their custom to keep a pistol in the place of business when it was open. That they only had one key to the house; that he also told Teague that he would have his pistol and key left at his place of business that night and that Teague said he would take care of them for him. The witness Teague in every respect corroborated the testimony of Roberts quoted above. Appellant testified in his own behalf that at the time of his arrest he was working for Tom Roberts; that Roberts was going to the pasture on the next day which was Sunday and told him when he closed up to take the pistol and key over to Teague's place and leave them there for him, and that he had started to take them; on the night of his arrest, he started to take them over there about 11 or 12 o'clock when Miller, the city marshal, stopped him and took the pistol and keys away from him. He testified further that he went out at the back door and went up the alley to urinate and then went on down the alley and turned up the street to go to Teague's place; when he got there by Mrs. Moore's, Miller stopped him; that at the time of his arrest he was on his way to carry the pistol to Teagues and that he would have gone there if he had not been arrested and stopped, and that at the time of the arrest he had not been anywhere else with the pistol; that at the time he was carrying it to Teague's place. He also states that at the time of his arrest, he told the city marshal that he was taking the pistol to Teague's place of business and that when the city marshal refused to let him do this, he asked him to let him take it and put it up at Roberts' place, which the marshal refused to do. On substantially this proof, the court below found against appellant's contention and defense that at the time of his arrest he was carrying the pistol from Roberts' place of business to Teague's place of business. It is elementary, of course, that where a case is submitted to the judge without the intervention of a jury that his conclusions on the facts will receive the same consideration and will be sustained by the same rules as those governing us in

passing on verdicts of juries.  It is also well settled that if there is any
evidence from which the conclusion and judgment of the court below
can be sustained or from which the guilt of a defendant is fairly in-
ferable, that we ought not to interfere unless it be in a case where the
preponderance of testimony against the judgment of the court below is
overwhelming, and such as to leave little, if any, ground on which the
judgment of the court below could in fairness be based.  In this case
we can well understand how the court might well have doubted the
truthfulness of the defense claimed, as shown by the record.  It does
not appear where Roberts lived or that it would have been more conven-
ient to have carried the pistol to his home, than to have left it at the
place of business of one who is presumably his competitor.  Again, if
he was going out of town on Sunday there would seem to be but little,
if any, occasion to carry his pistol with him and if he had done so, this
act would probably have been in itself a violation of the law.  Again,
if we may assume the credibility of testimony of the city marshal, the
movements and actions of appellant and Taylor who was with him,
are wholly inconsistent with the actions and conduct of a man who was,
as a matter of accommodation, merely carrying a pistol from one place
of business to another.  Again, the court no doubt, attached great im-
portance to the explanation of appellant when arrested, as to his reasons
for being in possession of the pistol when arrested which was, that one
Taylor had been cursing and abusing him, leaving, of course, the impres-
sion, if not in terms giving the reason that this was his explanation why
he was found in possession of the pistol.  That this was probably a fab-
rication is shown by the fact that in a little while Taylor came up to
where appellant and the city marshal were and was received without any
evidence or indication of lack of cordiality.  Again, it appears from the
testimony of the city marshal, that after Taylor came on the scene of
action that he made a statement to Taylor and defendant in substance,
that they were carrying the pistol with a view of taking a shot at him on
account of his trying to suppress gambling.  This statement, so far
as the evidence goes, seems to have been absolutely undenied.  Now
then, in this state of the record, can we say as a matter of law, that
the judgment of conviction is absolutely without evidence to support it?
While the appellant produces two witnesses supporting his defense and
which, taken in connection with his own testimony, might have fur-
nished the basis of an acquittal, still the credibility of these witnesses
was peculiarly a matter for the consideration of the court below, who
saw them, heard their testimony and had far better opportunities than
ourselves to determine their credibility.  We do not think in the light
of this record that this court, sitting at this great distance from the
scene of action, and judging the case alone from the record, ought to
overturn and set aside the judgment of the trial judge who heard the
testimony, and to whom we must accredit the purpose and intention
of judging and determining right and righteously.  This is the only
question of any consequence raised on the appeal and having deter-

mined same adversely to appellant it follows that the judgment of the court below should be affirmed which is accordingly done.

*Affirmed.*